BLAKENEY *v.* STATE

No. 40110 May 14, 1956 87 So. 2d 472

*Pershing B. Sullivan, Lampkin Butts,* Laurel; *Barnett, Jones & Montgomery,* Jackson, for appellant.

165

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

166

McGEHEE, C. J.

This is an appeal by Ance Blakeney, a former supervisor of District No. 2 of Smith County, Mississippi, from a conviction and a three-year sentence in the State penitentiary under Section 2123, Code of 1942, reading as follows: ''If any officer, or other person employed in any public office, shall commit any fraud or embezzlement therein, he shall be imprisoned in the penitentiary not more than ten years, or in the county jail not more than one year, or be fined.''

On this appeal there are several alleged errors assigned for a reversal of the case: (1) The overruling of the demurrer to the indictment; (2) the overruling of a plea in bar to the prosecution under the two-year statute of limitations, being Section 2437, Code of 1942, which reads in part as follows: ''A person shall not be prosecuted for any offense—murder, manslaughter, arson, burglary, forgery, counterfeiting, robbery, larceny, rape, embezzle-

ment, and obtaining money or property under false pretenses excepted—unless the prosecution for such offense be commenced within two years next after the commission thereof * .* *''; (3) the overruling of appellant's application for a continuance of the case to the next term of court; and (4) the overruling of the appellant's motion for a new trial.

The indictment against the appellant Ance Blakeney, omitting the formal parts, charged him with having willfully, unlawfully, feloniously and fraudulently, in August, 1953, and while acting as the elected and qualified Supervisor of District No. 2 of Smith County, Mississippi, employed one Earnest Blakeney (a distant relative) to work upon the public roads of District No. 2 of Smith County, at the rate of $5 per day, and did, while having the said Earnest Blakeney so employed, order and direct him to perform seven and one-half days work on the private farm owned and operated by the said Ance Blakeney, doing general farm work for the use and benefit of Ance Blakeney, and that he did willfully, unlawfully, feloniously and fraudulently pay Earnest Blakeney for said seven and one-half days labor with the funds of District No. 2 of Smith County, Mississippi, by means of a regular road and bridge fund warrant of the said district, in violation of Section 2123, Code of 1942, which code section is hereinbefore fully quoted.

 ██ We have concluded that although the indictment is not drawn so as to fully inform the accused of all of the details of his alleged offense, it is sufficient to adequately state the nature and cause of the accusation against him, and that therefore there was no error committed by the trial court in overruling the demurrer to the indictment.

As to the plea of the two-year statute of limitation, it will be noted from the quoted portion thereof that ''fraud'' in office as such is not excepted from the application of the said Section 2437, supra. It will also

be noted from Section 2123, supra, hereinbefore quoted in full, and to which specific reference is made in the indictment, that it is provided: "If any officer * * * * shall commit any fraud or embezzlement" in his office. And the said statute does not define by its terms either the crimes of "fraud or embezzlement", but merely fixes the punishment for either or both of the said crimes.

The two cases of Bracey v. State, reported in 64 Miss. pp. 17 and 26, respectively, have a bearing on the question here involved. The first of the said cases held that a circuit clerk was guilty of "fraud in office" under similar circumstances to those alleged in the indictment in the case at bar; and the second of the said cases held that where a circuit clerk issued a false and fraudulent witness certificate, which he placed in the hands of another person, who sold it to still another person upon the representation of the accused that the certificate was all right, and where no part of the money paid therefor was received by the accused, he was not guilty of obtaining money by false pretenses, the Court saying: "In order to convict him of the offense charged, it was necessary that the money obtained, or some part thereof, should have been obtained by him or for him." In the case at bar, if the facts alleged in the indictment were true, the supervisor received the benefit of seven and one-half days of labor on his farm, paid for by the road and bridge warrant referred to in the indictment.

██ █ Then, too, when Section 2123, supra, is considered with the immediately preceding section, we find that where any of the officers therein named shall "by any willful act or omission of duty whatever, defraud or attempt to defraud, the state, or any county * * * of any moneys, security, or property, he shall, on conviction thereof, *be guilty of embezzlement,* and fined * * * *." And while it is true that in order for a conviction of crime under a statute to be upheld, the accused must be guilty of the offense mentioned in the statute under

which he is indicted, and to which specific reference is made in the indictment, we have concluded that when these two statutes are construed together, the words ''any fraud'' in office referred to in Section 2123, mean the same as ''any fraud or embezzlement'', in view of the definition of fraud in office as being embezzlement in the immediately preceding section of the code; and that although the plea in bar presents in the minds of some if us a close question as to whether or not the said two-year statute of limitation applies, we all have finally reached the conclusion that we are not justified in reversing the action of the trial court in overruling the plea in bar.

As to the application for a continuance of the case to the next term of court, we call attention to the fact that this supervisor went into office from District No. 2 on the first Monday of January, 1952, and the contention of the prosecution is that at the August, 1953 meeting of the Board of Supervisors a warrant on the road and bridge fund of said district of the county was allowed and issued in favor of Earnest Blakeney for nineteen days of labor on the public roads of said district, at the sum of $5 per day, making a total of $95, and according to the testimony of the said Earnest Blakeney, and of Earnest Blakeney alone, this sum of money was in payment for some work done by him on the roads of said district and for seven and one-half days work done on the private farm of the said supervisor; that he did not appear before the grand jury to report this occurrence until October 27, 1955; that the accused was arrested on October 28, 1955, and that although the court was then in session a capias was issued for the accused and he was arrested on the same date, and thereupon released upon the giving of an appearance bond returnable to the April, 1956 term of the circuit court; that at that time there was pending before the Supreme Court of Mississippi an election contest involving the

question of whether or not he had been lawfully reelected as supervisor of the said district for another four-year term; that after he had entered into an appearance bond returnable to the April, 1956 term of the court, a second capias was procured for his immediate arrest on November 4, 1955, returnable instanter, and whereupon he was allowed to give another appearance bond for his attendance at court during the term then in session and until discharged by law; that he was arraigned for plea to the indictment on November 7, 1955, when an attorney, whose services he thought he had engaged to defened him on the charge, was present in court and advised him how to plead to the indictment; that he entered a plea of not guilty, and was asked whether or not it was agreeable to him, at a time when he was not actually being represented by an attorney, for the case to be set for trial November 10, 1955; and the sheriff and circuit clerk testified that he assented in open court to such setting of the case when the district attorney pro tem suggested that date for the trial.

However, it later developed on the hearing of the application for a continuance that the attorney who advised him on November 7 as to how to plead did not consider that his employment had been consummated since he and the accused had not agreed on a fee, and consequently when he was offered employment, by others who were interested in the prosecution of the appellant, on the night of November 9, 1955, he accepted employment to assist in the prosecution; that according to the testimony of this attorney, the accused had been written a letter subsequent to his arraignment and had been advised to come to Raleigh for a conference with him and another local attorney of the Smith County Bar whom he had asked to defend him, since they would need time to prepare the case for trial if they were to represent the accused; that the accused did not come to Raleigh until the morning of November 10, on which date the

case was set for trial; and that when he appeared in the courtroom, the attorney who had been employed the night before to prosecute him was present for that purpose, and the other attorney was not present; and that both of the said attorneys testified on the motion for a continuance that in their opinion the accused in good faith believed that he had arranged for their services, that is to say, that they would appear and defend him for such fee as might be agreed upon; that the case was called for trial on Thursday, November 10, 1955, under the foregoing circumstances; that thereupon the accused asked the court for further time to engage other counsel to defend him; that the accused then telephoned an attorney in Laurel to come to Raleigh and advised him that he would be required to be there in the early afternoon of that day; that this attorney from Laurel appeared at 1:15 P.M. that day and being wholly unfamiliar with the case, the court agreed to pass the same until the following morning at 8:30 o'clock; that this attorney obtained such information as he could about the case that afternoon, returned to Laurel that evening, and engaged the services of another Laurel attorney to assist him in the preparation of the application for a continuance, a demurrer and a plea in bar; that these papers were prepared by the two Laurel attorneys that night and were presented on Friday, November 11, and it appears that the testimony in support of the application for continuance, the argument on the demurrer and plea in bar consumed most of that day; that a jury was selected late Friday afternoon, and the taking of testimony was to begin on Saturday morning, November 12; that one of the attorneys requested the accused to make a thorough search at his home for his time book of the work done on the public roads and his time book for work done on his farm, and for any other evidence that would be pertinent to his defense; that these two books were found at about 3:00 or 3:30 A.M. the night before the trial; and

that the trial on the merits began on Saturday morning, and the arguments in the case were completed approximately 11 P.M., when the case was then submitted to the jury, with the result that the accused was found guilty as charged, and was thereupon removed from office by order of the court contained in the judgment reciting the conviction, the verdict of the jury, and the sentence of the court.

One of the attorneys from Laurel testified on the motion for continuance, and it appears that the accused had caused approximately fifty witnesses to be subpoenaed to testify in his behalf, not knowing what evidence to be given by them would be competent under the rules of evidence. A conference was called in order that the attorneys for the accused might confer with these witnesses but only two of them remained for the conference.

It appears that the warrant referred to in the indictment purported to cover nineteen days of work on the roads of the district, and the number of the warrant, the date and the amount thereof, were not stated in the indictment, but by calculation the amount could be arrived at, and the particular warrant in question could be thereby identified by a search of the claims turned in by the supervisor of that district at the August, 1953 meeting of the board of supervisors. However, the office of the chancery clerk was closed at night and the attorneys were in the courtroom all day except for the time consumed in going to and from Laurel. There were numerous claims to be examined, as well as the minutes of the board of supervisors, to find this particular claim and the amount and date of the warrant in question, but so far as we know that was the only warrant payable to Earnest Blakeney issued at the August, 1953 meeting of the board of supervisors. Nevertheless, the preparation for trial of a case of this nature and character re-

quired more time than a case involving an ordinary prosecution.

Prior to the performance of any work on the roads by Earnest Blakeney, it appears that a petition to the board of supervisors requesting an investigation as to the spending of the district's money "in an excessive, extravagent and unnecessary manner" had been signed by numerous citizens, including one of the jurors who served on the trial, and whether the accused had forgotten whose names were signed to this petition when this juror was accepted to serve, does not appear from the record. Had more time been allowed for the preparation of the case for the trial on behalf of the accused, this petition would likely have been discovered prior to the acceptance of the jury, and with the result that no person whose name appeared on the petition would have been accepted as a member of the jury to try the accused.

Then, too, the accused testified upon the trial that Earnest Blakeney had performed work on his farm, for which he paid him in cash. He was corroborated by other farm laborers, whose names appeared in his farm labor record, to the effect that they were present when the accused paid Earnest Blakeney for the farm labor, one of the witnesses having testified that he saw him give him a $20 and a $5 bill, and that Earnest Blakeney thereupon stated that he had only worked seven and one-half days on the farm due to the fact that a rain interfered with one-half day's work. The other laborers testified that they saw the accused pay Earnest Blakeney a sum of money in currency but they did not know the amount, and that they heard the accused say at the time that he was excusing himself from their presence, that he had to pay these farm laborers, meaning Earnest Blakeney and two others who appeared at his home while the witnesses were there.

While the accused did not testify on the trial that he took a receipt from Earnest Blakeney at the time he paid

him for the farm labor in cash, since he may have forgotten whether or not he took a receipt from him on July 7, 1953, more than two years prior to the return of the indictment and the trial of this case, the fact remains that after he was tried and convicted he found a receipt in his Bible at his home and produced it upon the hearing of the motion for a new trial. Earnest Blakeney admittedly endorsed the $95 warrant in his own handwriting, which was issued to him on August 4, 1954. The signature on this warrant, and on a $25 warrant for road work issued in July, 1953, is written "Earnest Blakeney." The receipt signed by Earnest Blakeney on July 7, 1953, reciting, "Received of Ance Blakeney $24 for eight days labor," is likewise signed "Earnest Blakeney." Obviously, this receipt and the endorsements of the $95 and $25 warrants are signed in the same handwriting. Moreover, Earnest Blakeney did not take the stand on the motion for a new trial to dispute the genuineness of his signature to the $24 receipt.

Except for the fact that the warrant was not issued until August 4, 1953, for $95, it could perhaps be said that at the time the accused delivered the warrant to Earnest Blakeney he procured the $24 receipt to show that this laborer had been paid for the farm labor in the $95 warrant of August 4, 1953. But the trouble with this theory would be that it is wholly improbable that Earnest Blakeney would have signed a receipt on July 7, 1953, for money that he did not receive until August 4, 1953. Had the trial been continued until the April, 1956 term of the court, the accused would in all probability have found this receipt at his home prior to the trial, since it is undisputed that he spent his time when away from court in searching for the time record of laborers on the road and the time record of the laborers in his field, which he did not find until 3:00 or 3:30 A.M. on the morning of the trial.

■■■ We have concluded that in view of the fact that he was left without an attorney to represent him when the case was called on the morning of November 10, 1955, due to an apparent misunderstanding between him and the two local attorneys who testified that they had agreed prior thereto to represent him, as shown by the testimony of these attorneys on the motion for a new trial, and who failed to appear at the trial to represent him due to the fact that no fee had been agreed upon and no arrangement had been made for the payment thereof, and in view of the further fact that the newly employed attorneys were unfamiliar with all of the facts in the case, the motion for the continuance should have been granted. That this is especially true in view of the fact that the accused had an election contest then pending before the State Supreme Court, wherein it was not known whether or not a new election would be ordered, and because a conviction at the October, 1955 term of the court would result in his removal from office, and, doubtless, to the delight of many persons who were interested in his prosecution, conviction and removal from office, as partisans in the election contest. Then, too, at that time the district was seething with a political turmoil on account of the contested election, etc., and a trial in advance of the final decision of that contest was not conducive to the obtaining of a jury where all of the members thereof would be wholly uninfluenced by the political situation then prevailing.

The case of the prosecution depended entirely upon the testimony of Earnest Blakeney as to whether or not he was paid for the time that he worked on the appellant's farm out of the personal funds of the appellant or was paid therefor in the $95 warrant. There is no dispute but that he worked at least seven and one-half days on the appellant's private farm, but the controlling issue of fact in the case was whether or not he was paid in cash for the farm labor as testified to by the accused and four

unimpeached witnesses. It remains to be seen whether or not a jury in search of the truth would convict the accused in the face of the unexplained receipt that Earnest Blakeney signed on July 7, 1953, for the $24 for eight days' labor. No receipt was needed if this payment had been made by a warrant.

The trial judge was very cooperative in assisting the defendant to obtain the presence of his absent witnesses at court. One of these witnesses was said to be in Jones County, one in Simpson County, and another in the State of Kansas. It is undisputed that the process server had not attempted to enlist the aid of the officers in either Jones or Simpson Counties for locating two of these witnesses until the circuit judge ordered additional subpoenaes issued and requested that such aid be enlisted. Those two witnesses were found. The witness in the State of Kansas had talked with the accused over the telephone shortly prior to the setting of the case for trial, but he could not be located by the defendant during the court term because of the fact that he was working for a trucking company and was away from the town of his headquarters. The record clearly indicates that the attendance of this witness could have been procured at the next term of court. The record shows that this witness was present at the time the accused claims that he paid Earnest Blakeney in cash for his labor on the farm.

Moreover, when they were ready to draw a jury for the trial of this case, a special venire of 250 men had been drawn from the jury boxes to appear on the following Monday morning for jury service in the Ross Hawkins' murder trial, leaving only twenty-two names in the jury box from which to select a jury in the case at bar. It was necessary for fourteen additional jurors to be summoned from the county at large, and then an additional ten names to be so drawn. Had the case been continued until the April, 1956 term of court, the jury boxes would have been refilled in the meantime.

██ ██ But, aside from the question of whether or not the accused was entitled to a continuance for the term, we are of the opinion that the motion for a new trial should have been sustained in view of the finding by the accused in his home of the unexplained receipt of Earnest Blakeney for the sum of $24 for eight days' labor. It was thought by the trial judge that this receipt did not constitute newly discovered evidence, and that for this reason the motion for a new trial was not well-taken. But we are of the opinion that this receipt falls within the category of a lost instrument of writing as of the time that the case was tried. If the defendant had had the receipt in his possession during the trial, and had known of its whereabouts, or had failed to make a reasonable search to locate the same, and had purposely withheld it from the jury during the trial, we would have a different situation. But there is nothing in the record to indicate that he knew that this receipt was at his home during the trial of the case. Most assuredly if he had known it was in his home and could have been located before the trial, he would have produced it for introduction at the trial, since the receipt unexplained by the signer thereof tends to strongly corroborate the testimony of the accused and his four witnesses that Earnest Blakeney was paid in cash for the farm labor. A receipt for money which an accused may have forgotten to have been taken, or which he was unable to locate after two years from the time of the occurrence, is, in our opinion, newly discovered evidence. If it was in his possession, and he did not recall its existence or its whereabouts after such a long time, and did not locate it in his search of his belongings for anything that would support his defense, it was the same as if he did not have it in his possession until after his conviction.

We have, therefore, concluded that it was error (1) to deny the application for a continuance, and (2) to overrule the motion for a new trial.

The *falsus in uno, falsus in omnibus* instruction was erroneous and should not have been given, and we assume that the same will not be given on a new trial, since it has been repeatedly condemned by the decisions of this Court. It is unnecessary that we discuss any of the other alleged errors assigned.

The trial judge is to be commended for his desire to clear his docket of important cases without unnecessary delay, and for his fairness to the defendant in trying to see to it that the attendance of his available witnesses was procured, but we are of the opinion that under all of the facts and circumstances hereinbefore related, the accused and his newly employed attorneys were entitled to more time to get this case ready for trial, and that the lack of sufficient time resulted in the failure to discover prior to the trial the whereabouts of the $24 receipt, which, when unexplained, is an important piece of evidence on the question of the guilt or innocence of the accused.

The principles announced in the case of Cruthirds v. State, 190 Miss. 892, 2 So. 2d 145, and the factual situation involved in the case of Gray v. State, (Miss.) 78 So. 2d 588, constitute authority for the decision that we are rendering in the case at bar, when considered in the light of the circumstances which confronted the appellant in the instant case.

For the error in overruling the motion for continuance in the first instance, and in overruling the motion for a new trial in the second instance, the case must be reversed and remanded.

Reversed and remanded.

*Hall, Lee, Kyle* and *Gillespie, JJ.,* concur.